

LAWRENCE S. LUSTBERG
Director

Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Direct: (973) 596-4731 Fax: (973) 639-6285
llustberg@gibbonslaw.com

July 17, 2017

**VIA ECF**

Honorable Kevin McNulty
United States District Judge
Frank R. Lautenberg U.S. Post Office & Courthouse
Federal Square
Newark, New Jersey 07102

  **Re: *United States v. Ravelo*,**
     **Criminal No. 15-576**

Dear Judge McNulty:

  Please accept this letter brief in lieu of a more formal submission on behalf of defendant Keila Ravelo in response to the government's pretrial motions, dated June 23, 2017 (ECF No. 121).

**I. The Government's Motion for Reciprocal Discovery.**

  Ms. Ravelo understands her obligation to provide the government with reciprocal discovery in accordance with Federal Rule of Criminal Procedure 16(b). When she has ascertained what materials she intends to use at trial – a process that is ongoing, based upon the discovery recently received and even more recently made available through the subpoenas issued pursuant to Rule 17(c) – Ms. Ravelo will make the disclosures required by Rule 16(b)(1)(A) and (C). Thus, the government's first motion – for a Court order compelling Ms. Ravelo to comply with her Rule 16 obligations – is both premature and unnecessary.

**II. The Government's Motion to Bar Defendant From Seeking Jury Nullification.**

  The government devotes the majority of its pretrial submission to its motion to "bar defendant from seeking acquittal through jury nullification." (Gov't Br. at 6.) This motion, like the first, is unnecessary. The defense, of course, has no intention of seeking jury nullification at trial. And, in any event, an appropriate jury instruction is the proper antidote for any perceived risk of nullification the government might have: "Potential unfairness to the government due to the possibility of jury nullification can be foreclosed. A proper charge directs the jury that it is obligated to apply the law, as explained to it by the court, fairly and impartially to the facts as it finds them. The government is entitled to no less and no more." *United States v. Orena*, 811 F. Supp. 819, 825 (E.D.N.Y. 1992); *see also United States v. Bissell*, 772 F.2d 896, 896 (3d Cir. 1985) (affirming instruction that defendant contended "deprived the jury of the option of nullification"); *United States v. Carr*, 424 F.3d 213, 219-20 (2d Cir. 2005) (affirming instruction to the effect that nullification was not an option).

GIBBONS P.C.

July 17, 2017
Page 2

As is evident from the government's submission, however, jury nullification is not all that the government seeks to preemptively preclude. Indeed, the government overtly asks the Court to "at a minimum . . . bar the defendant from adducing evidence (whether by cross-examination, direct examination, the admission of exhibits), arguing to the jury, or seeking instructions on" a wide range of broadly worded subjects directly relevant to Ms. Ravelo's defense. (Gov't Br. at 8.) As set forth below, each of the government's five (5) separate requests, cast as a concern about jury nullification, but really an *in limine* evidentiary motion, is improper and should be denied.

*First*, the government seeks to bar evidence and argument regarding "[t]he penalties the defendant faces if convicted, the fact that the defendant is a mother of two children and/or that if convicted both of her children's parents will be incarcerated, or other facts that prey on a jury's sympathy or bias" (Gov't Br. at 8). Although the defense will not, of course, seek to introduce evidence or argument about the penalties Ms. Ravelo faces if convicted, whether the other objected-to information is relevant and admissible at trial depends in large part on whether Ms. Ravelo decides to testify in her defense. If she does, the type of basic background information the government seeks to exclude at this pretrial stage is unquestionably appropriate to elicit on direct examination, subject to an appropriate jury instruction.[1] *See, e.g., United States v. Dobson*, 454 F. App'x 127, 130 (3d Cir. 2011) ("Evidence which is essentially background in nature . . . is universally offered and admitted as an aid to understanding.") (citation omitted); *United States v. Boros*, 668 F.3d 901, 908 (7th Cir. 2012) ("evidence is relevant when it provides background information about the defendant or the offenses charged"); *United States v. Blackwell*, 853 F.2d 86, 88 (2d Cir. 1988) ("considerable leeway is allowed . . . on direct examination for proof of facts that do not bear purely on the legal issues, but merely fill in the background of the narrative . . . .") (citation omitted). In other words, the government's first request is, at minimum, premature, but in any event is simply incorrect as a matter of law.

*Second*, the government seeks to bar evidence and argument relating to the fact "[t]hat Law Firm 1, Law Firm 2, and/or Client 1 (as defined in the Indictment) did not discover the fraud for a long period or had policies that enabled the fraud" (Gov't Br. at 8). The impropriety of this request is self-evident; Ms. Ravelo's lack of knowledge about the alleged fraudulent scheme while it was underway is central to her defense. Naturally, then, evidence that the purported victims of the scheme – the law firms and client identified in the Indictment – also did

---

[1] The government's open-ended request to bar "other facts that prey on a jury's sympathy or bias" is obviously overbroad, unsustainable and would, in any event, be cured, even if such facts are brought to light, by an appropriate jury instruction, which the Court would be required to give. *See* Mod. Crim. Jury Instr. 3rd Cir. 3.01 ("Do not allow sympathy, prejudice, fear, or public opinion to influence you"); *see also United States v. Berrios*, 676 F.3d 118, 136 n.10 (3d Cir. 2012) (affirming instruction that jury was "to perform [its] duties without sympathy, without bias, and without prejudice to any party," because "[o]ur system of law does not permit jurors to be governed or affected by bias, sympathy or prejudice."). Such an instruction would likewise cure any perceived fears the government has about testimony from Ms. Ravelo regarding the topics sought to be excluded.

Gibbons P.C.

July 17, 2017
Page 3

not discover the alleged fraud during that same period is relevant to (although concededly not dispositive of) her contention that she reasonably did not know of the fraud being perpetrated by Mr. Feliz.[2]  That contention is, of course, supported by the other facts of the case, including that: (1) Ms. Ravelo was transparent with her colleagues about the firms' use of, and payment to, the litigation support companies at issue, and (2) directly contrary to the government's allegations in the Indictment, those companies in fact delivered actual work product, which was used by Law Firms 1 and 2 in furtherance of their representation of Client 1.[3]  Thus, the government's second request should also be denied.

The Court should also deny the government's *third* request to bar evidence and argument "[t]hat the defendant was coerced or forced to commit the charged offenses, unless: (1) the defendant advises the Court and the Government well in advance of trial that she is raising a duress defense; and (2) the parties have the opportunity to brief the issue, as the Government does not believe the facts of the case support a duress defense." (Gov't Br. at 8.)  Through that request, the government seeks a statement to which it would be entitled were the defendant claiming alibi, insanity or public authority.  *See United States v. Atias*, No. 14-cr-0403 (DRH), 2017 WL 563978, at *4 (E.D.N.Y. Feb. 10, 2017) ("the Federal Rules of Criminal Procedure provide for the pretrial notice vis a vis three specifically named, and presumably exhaustive, defenses: alibi (Rule 12.1), insanity (Rule 12.2), and public authority (Rule 12.3).").  But Ms. Ravelo is claiming none of those and so the government's request, which is, of course, completely unsupported by any authority, must be rejected.  Even more fundamentally, however, regardless of whether Ms. Ravelo intends to present a duress defense at trial, she is plainly entitled to offer evidence bearing on her *mens rea*, including any evidence that she "was coerced or forced to commit the charged offenses." (*Id.*)  After all, the principal crimes for which Ms. Ravelo is charged – wire fraud and conspiracy to commit wire fraud – are *specific intent* crimes.  *See United States v. Onque*, 665 F. App'x 189, 197 (3d Cir. 2016) ("wire fraud is a specific intent crime"); *United States v. Flemming*, 223 F. App'x 117, 126 (3d Cir. 2007) ("for charges of fraud or conspiracy, specific intent crimes, the indictment must charge 'with particularity' the facts supporting the offense'") (citation omitted).

---

[2] The cases cited in footnote 1 of the government's brief are therefore inapposite; the defense is not arguing that the fact that "Law Firm 1, Law Firm 2, or Client were neglig[ent]" provides Ms. Ravelo a defense.  (Gov't Br. at 8, n.1).  *See United States v. Binday*, No. 12-cr-152 (CM), 2013 WL 12154927, at *1 (S.D.N.Y. Sept. 16, 2013) (denying as "unnecessary" government's *in limine* motion to preclude evidence and argument that alleged victims acted negligently); *United States v. Kistner*, No. 11-cr-00283, 2013 WL 80255, at *7 (S.D. Ohio Jan. 7, 2013) (denying government's motion to preclude evidence that alleged victims were negligent where defense argued that evidence of alleged victims' conduct and "practices and procedures at the time of the alleged conduct are relevant to the issue of whether Defendants' actions were material").

[3] The evidence will also show that, given the law firms' and client's policies and practices – which encouraged, or at least allowed, nepotism – Ms. Ravelo reasonably believed that it was appropriate to use a litigation support company associated with her husband without disclosing her marital relationship.

G<small>IBBONS</small> P.C.

July 17, 2017
Page 4

      In that regard, a recent decision from the United States Court of Appeals for the Ninth Circuit makes the point well. In *United States v. Haischer*, 780 F.3d 1277 (9th Cir. 2015), the Ninth Circuit confronted an appeal from a district court's decision to exclude evidence that the defendant, charged with wire fraud and conspiracy to commit wire fraud, argued was relevant to show her lack of knowledge and intent to defraud. Specifically, the district court had excluded evidence of abuse that the defendant had suffered at the hands of her former boyfriend and alleged co-conspirator. *Id.* at 1280-81. On appeal, the Ninth Circuit vacated the defendant's conviction and held that the district court's "exclusion of the evidence violated [defendant's] due process rights." *Id.* at 1284. As the Ninth Circuit explained, "[b]ecause [defendant's] knowledge and intent were necessary elements of wire fraud, the evidence [of abuse] related to a critical element of the government's case" and "would have been central evidence in support of [defendant's] *mens rea* defense."[4] *Id.*; *see also United States v. West*, 746 F. Supp. 2d 932, 939 (N.D. Ill. 2010) ("coercion can negate intent for crimes whose *mens rea* is defined with a certain specificity."). Similarly here, evidence relevant to (and tending to disprove) Ms. Ravelo's alleged knowledge and specific intent to defraud – whether characterized as evidence of duress, coercion, or abuse – should not and cannot be excluded. *See generally Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (the United States "Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense," such that a court may not "exclude competent, reliable evidence . . . central to the defendant's claim of innocence . . . [i]n the absence of any valid state justification"); *United States v. Stever*, 603 F.3d 747, 755 (9th Cir. 2010) ("the erroneous exclusion of important evidence will often rise to the level of a constitutional violation").

      *Fourth*, the government asks the Court to bar evidence and argument relating to "[a]ny allegation that Gary Friedman, a plaintiffs' lawyer in the multi-district litigation against major credit companies, acted improperly in the course of that multi-district litigation." (Gov't Br. at 8.) As an initial matter, the government's fourth request is expressly conditioned on something in its own control; if Friedman testifies as a government witness at trial, the government concedes (as it must) that evidence and questioning about Friedman's misconduct would be appropriate "for purposes of cross-examination."[5] (*Id.*); *see, e.g., United States v. Saada*, 212 F.3d 210, 221 (3d Cir. 2000) (credibility "may be impeached with opinion and reputation evidence of character under Rule 608(a)"); *United States v. Barr*, No. 14-592 (KM), 2015 WL 6870062, at *5 (D.N.J. Nov. 6, 2015) ("Under Federal Rule of Evidence 608(b)(1), cross-examination may include specific instances of conduct concerning a witness's character for

---

[4] This was so notwithstanding that the defendant *abandoned* her duress defense at trial; according to the Ninth Circuit, the evidence of coercion and abuse supported the defendant's trial theory "that she signed the [alleged fraudulent loan] documents without knowing what they said because of pressure from [her abuser], such that she lacked the required knowledge and intent." *Id.* at 1282.

[5] The government's suggestion that evidence about Friedman's misconduct can be used during Friedman's cross-examination only "if so approved by the Court" is inappropriate and requires, at minimum, a greater proffer from the government as to why that would be so.

G<small>IBBONS</small> P.C.

July 17, 2017
Page 5

truthfulness or untruthfulness, subject to the familiar probativeness/prejudice balancing test of Rule 403"). Put another way, because the government's request would, by its own admission, be mooted if it calls Friedman as a witness, the government should simply disclose at this time whether it intends to do so if it wishes the Court to decide this application.

But even if the government does not plan to call Friedman as a witness at trial, its fourth request is nevertheless improper. As the Court will recall, it was the government that injected Friedman into this case in the first place; as reflected in the affidavit used to obtain a warrant to search Ms. Ravelo's cell phone, the government characterized Friedman as a possible co-conspirator in the fraudulent scheme alleged in the Indictment. (*See* ECF No. 106-1, Gov't. Aff. ¶ 27.) Evidence about Friedman's relationship with Ms. Ravelo and, more significantly, with Melvin Feliz – the mastermind of the alleged scheme – is therefore crucial to understanding the government's charges and Ms. Ravelo's lack of culpability, knowledge, or involvement.

Nor is this relationship fanciful. It is anticipated that the evidence will show that Friedman's relationship with Feliz pre-dates the antitrust MDL at which the government's fourth request is directed. Indeed, for many years Friedman regularly did business with, and received work product from, Feliz and the litigation support companies that Feliz operated. Thus, in addition to informing Ms. Ravelo's understanding of how Feliz operated his companies – *i.e.*, legitimately, by delivering the work he was retained to provide – that Feliz's companies generated actual work product directly contradicts one of the key allegations in the Indictment – that the litigation support companies at issue generated no work product at all. (Indictment ¶¶ 4-9.) Critically, specific examples of that work product were revealed as a result of the very misconduct the government now seeks to preclude. For example, in an Order disapproving a proposed settlement on the basis of Friedman's misconduct in the antitrust MDL in which both Ms. Ravelo and Friedman were involved,[6] the United States District Court for the Eastern District of New York concluded "that confidential American Express information [provided by Friedman to Ms. Ravelo] in fact may have been used for MasterCard's benefit," as evidenced by certain "vendor work," including "'electronic and manual review of documents, deposition analysis, and written work product'" – more specifically, documents indicating "that in 2012, Alternative Litigation Solutions, a litigation support vendor [*i.e.*, "Vendor 1" in the Indictment], prepared reports for MasterCard, based on data from highly confidential American Express depositions and documents, regarding American Express's experience with surcharging in Australia." (E.D.N.Y. No. 11-md-2221, ECF No. 658, at 34 n.41). In other words, that Friedman "acted improperly in the course of that multi-district litigation" (Gov't Br. at 8) is not

---

[6] By way of background, Friedman served as counsel for the retailer plaintiffs in two antitrust multi-district litigations brought against major credit card companies in the United States District Court for the Eastern District of New York: *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation*, No. 05-md-1720 and *In re American Express Anti-Steering Rules Antitrust Litigation*, No. 11-md-2221. In February 2015, during the course of an internal investigation of Ms. Ravelo's conduct, numerous emails between Friedman and Ms. Ravelo (who represented MasterCard, one of the major credit card company defendants) were uncovered in which Friedman apparently disclosed confidential and/or privileged client information to Ms. Ravelo.

GIBBONS P.C.

July 17, 2017
Page 6

only relevant to his credibility, as such actions always are, *see, e.g.*, Fed. R. Evid. 608, but also directly relevant to the central allegation of this case – that Feliz's litigation support companies did not deliver work product. Such evidence, therefore, should not be excluded regardless of whether Friedman testifies as a government witness at trial.

*Fifth*, and finally, the government requests that evidence and argument regarding "the facts that the defendant's husband has been convicted of federal crimes (including narcotics offenses), is a narcotics trafficker, and/or fathered a child outside of his marriage to the defendant" be barred "[u]nless and until such time when Mr. Feliz testifies and the Government has the opportunity to be heard on the matter." (Gov't Br. at 9.) Once again, any analysis of this matter turns, to a great extent, upon whether the government intends to call Feliz as a government witness, a matter which is uniquely within its knowledge and control and which the government – having raised this matter in its motion – should disclose to the Court and counsel for purposes of resolving this application. For if Feliz is going to testify, there can be no question but that these subjects would be appropriate cross-examination. *See, e.g.*, Fed. R. Evid. 608, 609; *Wright v. Vaughn*, 473 F.3d 85, 93 (3d Cir. 2006) ("The right to confront witnesses includes the right to conduct reasonable cross-examination."). But whether Feliz testifies or not, evidence about his deception is directly relevant to the government's charges against Ms. Ravelo, since evidence that Feliz – the alleged co-conspirator and mastermind of the charged fraudulent scheme – was "a narcotics trafficker", "fathered a child outside of his marriage to the defendant," and had a second family, all entirely unbeknownst to Ms. Ravelo, is consistent with her defense that she did not know about Feliz's scheme while it was underway. (Gov't Br. at 9.) Accordingly, the government's fifth request should also be denied.

In sum, the government's motion "to bar defendant from seeking acquittal through jury nullification" should be seen for what it is: a transparent attempt by the government to bar inconvenient but admissible evidence under the guise of fears of jury nullification. Accordingly, the government's motion should be denied so as to ensure that Ms. Ravelo is not denied her constitutional rights to confront and cross-examination the witnesses against her and to present a complete defense in this matter. *See California v. Trombetta*, 467 U.S. 479, 485 (1984) ("We have long interpreted [the Fourteenth Amendment due process] standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense."); *Haischer*, 780 F.3d at 1284 ("[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. This right includes, at a minimum, . . . the right to put before a jury evidence that might influence the determination of guilt.") (citation omitted); *United States v. Silveus*, 542 F.3d 993, 1006 (3d Cir. 2008) ("The Supreme Court has held that '[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.'") (quoting *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974)).

GIBBONS P.C.

July 17, 2017
Page 7

### III.  The Government's Motion For A Pretrial Hearing Pursuant to Fed. R. Evid. 104.

Ms. Ravelo has no objection to the government's conditional request for a pretrial hearing pursuant to Federal Rule of Evidence 104, should one be necessary.[7]  Of course, at any such hearing, the government will be required to provide appropriate discovery, including witness statements, pursuant to Federal Rules of Criminal Procedure 12(h) and 26.2.

### IV.  Conclusion

For the reasons stated above, Ms. Ravelo respectfully requests that the Court: (i) deny the government's motions for reciprocal discovery and to bar the defense from seeking jury nullification; (ii) require the government to disclose whether it intends to call Gary Friedman and/or Melvin Feliz as a government witness at trial; and (iii) require the government to provide appropriate discovery, including witness statements, should its requested hearing pursuant to Federal Rule of Evidence 104 become necessary.

Respectfully submitted,

/s/ Lawrence S. Lustberg
Lawrence S. Lustberg, Esq.
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
(973) 596-4500
llustberg@gibbonslaw.com

cc:   Steven H. Sadow, Esq.
       John D. Haggerty, Esq.
       Andrew D. Kogan, Assistant U.S. Attorney

---

[7] The defense does not anticipate that such a hearing will be necessary on the subjects identified in the government's motion; if and when the government presents an appropriate form of stipulation, the defense anticipates that it will stipulate to the admissibility of most, if not all, of the "bank records and business records obtained from Law Firm [1] and Law Firm 2." (Gov't Br. at 10.)